UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
UNITED STATES OF AMERICA,

                Plaintiff,

   -against-                                    **ORDER**

KIRK FERET,                                    05-mj-00075 (KAM)

                Defendant.
------------------------------------------------------------------- X

**MATSUMOTO, United States Magistrate Judge:**

        Defendant Kirk Feret ("Feret" or "defendant") seeks an order "that this matter be sealed and removed from [his] criminal history." (Docket no. 11.) Because the court finds that defendant has not demonstrated "unusual or extreme circumstances" warranting expunction of his arrest record and sealing of this matter, his application is denied.

**I. Background**

        On February 14, 2005, defendant was arrested and charged with violating 21 U.S.C. §§ 952(a), 960, Importation of a Controlled Substance. (Doc. no. 1, complaint ¶ 1.) The complaint alleges that on or about September 4, 2002, defendant knowingly and intentionally imported into the United States MDMA, commonly known as "Ecstasy," a Schedule I controlled substance. (Id.) According to John Condon ("Condon"), Special Agent with United States Immigration and Customs Enforcement ("ICE"), the criminal complaint was supported by information obtained through Condon's own participation in the investigation, the reports of other special agents of ICE and federal investigators engaged in the investigation of narcotics importation, and from cooperating witnesses, some of whom had participated in narcotics importation. (Id.)

One of those cooperating witnesses, CW-1, advised the government that he recruited defendant in mid-2002 to travel to Europe in order to retrieve narcotics for import into the United States. (Id., ¶ 3.) After having made several trips, CW-1 recruited defendant to also serve as a courier. Further, defendant agreed to accept $10,000 to serve as a drug courier, half of which was paid to defendant in advance of his trip. (Id.) In August of 2002, CW-1 and defendant traveled to Europe, and upon their arrival in Belgium exchanged two suitcases filled with money for one drug-filled suitcase, which both individuals knew to contain narcotics in a concealed false compartment. (Id., ¶ 4.) Defendant and CW-1 returned to the United States from Germany on the same flight with the drug-filled suitcase, and although CW-1 traveled on the plane with the suitcase, defendant returned with the drug-filled suitcase to his home in New Jersey. (Id., ¶ 5.) Defendant later delivered the suitcase to CW-1, at CW-1's apartment in New Jersey. (Id.)

For reasons not revealed in the record, the complaint was dismissed without prejudice on March 1, 2005. (Doc. no. 10.) As noted by the Government, there is no claim that defendant's arrest was improper or unsupported by probable cause. (Doc. no 12, Response in Opposition to Motion to Seal Case of Kirk Feret, ¶ 1.) Defendant contends that, despite the dismissal of the complaint and the lack of further interactions between defendant and the government, defendant's employment prospects have been or will be affected by the appearance of an arrest in his criminal history. (Doc. nos. 11 and 14.)

## II. Discussion

"It is well established that federal courts may, through the exercise of their inherent powers, order the expunction of arrest records." In re Farkas, 783 F. Supp. 102, 103 (E.D.N.Y. 1992) (citing United States v. Noonan, 909 F.2d 952, 956 (3d Cir. 1990); United

States v. G., 774 F.2d 1392, 1394 (9th Cir. 1985)). According to the court in United States v. Schnitzer, "a request for expungement must be examined individually on its merits to determine the proper balancing of the equities." 567 F.2d 536, 540 (2d Cir. 1977). Those equities are "the right of the privacy of the individual" and the "right of law enforcement officials to perform their necessary duties." Id. at 539. "Retaining and preserving arrest records serves the important function of promoting effective law enforcement." Id. However, courts acknowledge that an arrest record, regardless of the disposition of the case, can result in profound adverse consequences for the individual arrested. Id. (citing Herschel v. Dyra, 365 F.2d 17, 20 (7th Cir. 1966); Paul v. Davis, 424 U.S. 693 (1976)). Nevertheless, the power to expunge "is a narrow one, and should . . . be reserved for the unusual or extreme case." Id. at 539-40 (citing United States v. Linn, 513 F.2d 925, 927 (10th Cir. 1975)). Extreme circumstances have been found and records have been expunged where mass arrests have rendered judicial determinations of probable cause impossible; where the sole purpose of the arrests was to harass civil rights workers; where the police misused the police records to the detriment of the defendant; or where the arrest was proper but later based on a statute declared unconstitutional. Id. (internal citations omitted).

In this instance, Feret has not disputed the legality of his arrest or the statute under which he was charged, 21 U.S.C. § 952(a). Although the charges against the defendant were dismissed without prejudice, the government has not conceded defendant's innocence. There is no claim that defendant's arrest was improper or unsupported by probable cause. Instead, defendant claims only that there is a potential adverse effect on his future employment. (Doc. no. 11, ¶ 2; doc. no. 14, ¶ 4.) The possibility that an employee "may be asked to explain the circumstances surrounding his arrest" fails to constitute a harsh, unique, or extreme

circumstance, and thus is not sufficient to warrant expunction of defendant's record. See Schnitzer, 567 F.2d at 540 (affirming denial of motion to expunge based on alleged damage to reputation where defendant was a rabbinical student); see also Slansky v. White, No. 96 Civ 2338, 1996 WL 312401, at * 2 (S.D.N.Y. June 10, 1996) (denying motion where defendant alleged potential adverse effect on employment); United States v. Seibel, No. M-65, 1999 WL 681276, at * 1 (S.D.N.Y. August 31, 1999) (denying motion to expunge where defendant alleged harm to reputation); see also Farkas, 783 F. Supp. at 104 (denying motion to expunge where defendant asked court to consider his current employment as a vice-president of a prestigious securities firm and was subject to inquiry by the National Association of Securities Dealers).

Although defendant may be asked to explain the circumstances of his arrest in connection with a background check for a securities job (doc. no. 14, ¶ 4), "such an explanation may be expected from those about to enter a profession . . . ," and any harm "does not fall within the narrow bounds of the class of cases where expungement has been declared appropriate." Farkas, 783 F. Supp. at 104; see also Schnitzer, 567 F.2d at 540. The court in Farkas aptly stated:

> This court should not substitute its own judgment for that of the NASD [National Association of Securities Dealers], or for that of the state bar examiners, the pharmacist licensing board, or any other body charged with maintaining the standards of a vocation. It is they who must evaluate the character and qualifications of potential and present members of their respective professions, in each case applying their own particular criteria to the facts before them.

783 F. Supp. at 104. As in Farkas, "this court declines to usurp the wise exercise of their discretion by removing such records entirely from view." Id.

### III.  Conclusion

For the reasons stated above, the application for an order sealing this matter and expunging defendant's arrest record is hereby denied.

**SO ORDERED.**

Dated: August 3, 2007
      Brooklyn, New York

/s/
**Kiyo A. Matsumoto**
United States Magistrate Judge
Eastern District of New York
